JAMES P. CORR et al., as Administrators of the Estate of PETER H. CORR, Deceased, Appellants, v. GEORGE F. HOFFMAN et al., Respondents.

(Argued February 11, 1931; decided May 12, 1931.)

*Thomas E. O'Brien* and *Robert A. Huddleston* for appellants. The findings made at plaintiff's request are irreconcilable with the findings upon which defendants must rely to support the judgment in their favor, and entitle plaintiff to judgment directing a dissolution and accounting and dismissing the counterclaim upon the merits. (*Whalen* v. *Stewart,* 123 App. Div. 446; 194 N. Y. 495.) It was reversible error for the referee to make the supplemental decision, which affected substantial rights of the plaintiff by dismissing the complaint as to defendant George Hoffman and granting him judgment on his counterclaim after an accounting by him had been directed by the original decision and his motion for judgment on the counterclaim had been denied. (*Herpe* v. *Herpe,* 225 N. Y. 323; *Clancy* v. *New York, etc., Co.,* 226 N. Y. 213; *Valz* v. *Sheepshead Bay Bungalow Corp.,* 249 N. Y. 122; *McCall* v. *McCall,* 129 Misc. Rep. 127; *Redondo Steamship Co., Inc.,* v. *Irving Bank-Columbia Trust Co.,* 221 App. Div. 694.) The finding that there had been accounts stated was erroneous. (*Rodkinson* v. *Haecker,* 248 N. Y. 480; *Marston* v. *Gould,* 69 N. Y. 220; *Marvin* v. *Brooks,* 94 N. Y. 71; *Insurance Co.* v. *Whitlock,*

216 App. Div. 78.) The right of pre-emption provided for in the original articles of partnership did not survive the original three-year term of the partnership, and on that ground the counterclaim should have been dismissed. (*Meinhard* v. *Salmon*, 249 N. Y. 458; *Donemar, Inc.*, v. *Malloy*, 252 N. Y. 360; *Falk* v. *Hoffman*, 233 N. Y. 199; *Cookson* v. *Cookson*, 8 Sim. 529; *Clark* v. *Leach*, 8 L. T. Rep. [N. S.] 40; *Neilson* v. *Mossend Iron Co.*, L. R. [1886] 11 App. Cas. 298; *Yates* v. *Finn*, L. R. 13 Ch. Div. 829; *Sherwood* v. *Tucker*, 2 Ch. 440; *Massett* v. *Ruh*, 202 App. Div. 522; 235 N. Y. 462; *Karrick* v. *Hannaman*, 168 U. S. 328.)

*Henry W. Hardon* and *Edward S. Malone* for respondents. No inconsistency in the findings requires a reversal of the judgment. (*Chappedelaine* v. *Deschenaux*, 4 Cr. 306; *Stearns* v. *Page*, 7 How. 819; *Gage* v. *Parmlee*, 87 Ill. 329; *Porto Rico Co.* v. *Kohn*, 20 Fed. Rep. [2d] 705; *Carpenter* v. *Kent*, 18 J. & S. 371; 101 N. Y. 591; *Parkinson* v. *Hanbury*, 2 L. R. H. L. 1; *Carpenter* v. *Kent*, 101 N. Y. 591; *Ballard* v. *Beveridge*, 171 N. Y. 194; *Furman* v. *Terbush*, 188 App. Div. 402; *Bruen* v. *Hone*, 2 Barb. 586; *Heartt* v. *Corning*, 3 Paige, 566; *Ouderkirk* v. *Bayless Co.*, 119 N. Y. 366.) The finding that there had been accounts stated was correct. (*Rodkinson* v. *Haecker*, 248 N. Y. 480.) The right of the defendant partner to buy out the plaintiff survived the original three-year term. (Partnership Law, § 45; *Robertson* v. *Miller*, 20 Fed. Cas. 946; *U. S. Bank* v. *Binney*, 28 Fed. Cas. 811; *Matter of Marx*, 106 App. Div. 212; *Housman* v. *Waterhouse*, 191 App. Div. 850; *Cox* v. *Willoughby*, 13 Ch. Div. 863; *Neilson* v. *Mossend Iron Co.*, 11 App. Cas. 298; *Daw* v. *Herring*, 1 Ch. 284; *Brooks* v. *Brooks*, 85 L. T. Rep. 453.)

LEHMAN, J. In September, 1901, the plaintiff, Peter H. Corr, and the defendant, George F. Hoffman, entered

into a written agreement " to become copartners together in the art and trade of manufacturing, buying, selling and vending rope, twine, hammocks, etc., which said copartnership shall continue from the date of these presents for and during and to the full end and term of three years next ensuing." The copartnership, so formed, maintained a principal office in Philadelphia and a branch office in New York city, under the firm name of Hoffman-Corr Manufacturing Company. At the expiration of the term of three years, it was continued by mutual consent, without new articles. From that time the copartnership was terminable at will but, so long as it continued, the mutual rights and obligations of the partners remained as defined in the written contract, except in so far as particular provisions of the written articles might thereafter be modified by agreement or might be intended to apply only during the original fixed term of three years.

At the time the copartnership was formed, George F. Hoffman was a resident of Philadelphia. There he had been a member of a firm which had conducted a similar business. He owned or controlled whatever remained of the business of that firm, and he intended to continue that business in partnership with the plaintiff. The plaintiff resided in New England, where he conducted a different business. It was agreed in the written contract that Hoffman " is to supervise and direct the affairs of the said business " and that Corr " is to have nothing whatever to do with the management of the business." Profits and losses were to be shared equally, but Hoffman, as managing partner, was to receive the sum of $10,000 as a salary to be charged as an expense against the net profits of the business. The contract recites that Hoffman " delivered in as stock and money the sum of Fifty Thousand Dollars," and that Corr " has likewise delivered the sum of Fifty Thousand Dollars " to be used in the partnership business. No further sum was to be con-

tributed by Corr unless mutually agreed to in writing by and between the parties, but Hoffman might " at his discretion contribute a sum greater than Fifty Thousand Dollars."

Under Hoffman's management the business grew and prospered. Both partners, enriched by its success, were satisfied to leave unchanged the terms of the copartnership contract, except that in 1918 they agreed upon a modification intended to provide for the payment of larger compensation to Hoffman, free from income tax. Corr continued to repose complete confidence in Hoffman. At times he directed inquiries to Hoffman as to some details of the business, perhaps occasionally he was consulted by Hoffman. At the close of each year he received a statement of account which purported to show the condition of the partnership affairs and the annual profits and losses. He had access to the books of the partnership, and the bookkeeper gave him such information as he requested. Corr, after opportunity to examine these annual statements, accepted them and the profits and losses, as shown on the statements, were equally shared by the partners. Out of these profits Corr made additional contributions to the firm capital. Hoffman's contributions to the firm capital were much larger. The annual statement showed the capital contribution of each partner and in accordance with the terms of the partnership contract, six per cent upon such contribution was allowed to each partner.

The profits of the business were not steady. They were somewhat speculative in their nature. They rose during the hectic years of the World War. They declined in the following years and in some years there was a net loss in the conduct of the business. The plaintiff accepted without objection the annual statements of account, in good years as in bad years; but in 1925 a growing distrust and suspicion of his partner and some

of the principal employees of the firm, a doubt whether he had received an equal share of the profits earned in past years, led the plaintiff to investigate the affairs of the copartnership and to examine its books. Then he brought this action against his partner, George F. Hoffman, and against his partner's brother, Frank E. Hoffman, the manager of the New York office of the firm. He charges in his complaint that they had wrongfully diverted and misappropriated partnership funds and, by fraudulent records and entries in the firm books and accounts, had concealed such diversion and misappropriation; and he asks for a dissolution of the partnership, an accounting of all moneys received by the defendants, or either of them, in connection with the business of the partnership, and a direction that they shall make restitution of all moneys or assets " misapplied, misappropriated or diverted from said partnership."

The plaintiff was entitled, even without proof or allegation of fraud or wrongdoing, to a partnership accounting, unless the receipt and acceptance of the annual " statements of account " and the adjustment of the shares of the partners in the profits and capital of the firm constituted annual accountings or statements of account by the partners. Anticipating a claim that by accepting, without objection, these statements, he had precluded himself from thereafter asserting that they did not correctly reflect the condition of the firm business, the plaintiff alleges in his complaint that he had received from time to time from the defendants statements of accounts purporting to be perfect, just and true, and that he had relied upon them to his damage and detriment " although said statements of accounts were in many respects false and fictitious, imperfect and untrue."

The complaint was amplified by two bills of particulars which set forth in detail the matters in which the plaintiff claims that he was defrauded by the defendants. In their answers the defendants denied all allegations of

fraud and wrongdoing and the defendant George F. Hoffman asserted in a counterclaim a right to purchase the plaintiff's share in the partnership business by virtue of a clause contained in the original written contract of copartnership for a fixed term. The issues were referred to a referee " to hear and determine."

It is not entirely clear whether in his complaint the plaintiff sought to impeach accounts stated between the parties on the ground of fraud or whether he maintained that no accounts had been stated. For the purposes of this appeal the distinction is immaterial. There has been an exhaustive and careful trial by the referee in regard to every charge contained in the complaint and in the bills of particulars, regardless of whether the charge was of misappropriation or of fraudulent concealment of the condition of the business by fictitious entries in the books, reflected in the annual accounts rendered. The books of the partnership were produced and examined with the help of accountants and auditors. The charges of alleged diversions, made by the plaintiff in his pleadings or at the trial, have been tried out as completely as they could be upon a new accounting.

The referee in his opinion exhaustively analysed the evidence. Further analysis now would serve no purpose. In unequivocal terms the referee in his opinion exonerated the defendants from every charge of fraud or misappropriation or diversion of the moneys or assets of the corporation. " There is no ground whatever in this case," the referee said, " for the charges that have been levelled against these defendants. Books of account in considerable volume, and records in great number, have been produced and laid bare to the plaintiff on this trial. The plaintiff has had substantially all the benefits of an accounting. I find that the plaintiff was kept informed from year to year and, indeed, frequently discussed between the yearly period, all matters of the partnership about which he saw fit to inquire. The charges of conspiracy are groundless."

The evidence did, nevertheless, show that the books were in some respects inaccurate, and, in that sense, false, and so the referee found. At times, payments which were in themselves proper and lawful were entered in the books in a manner which concealed their real nature. Bonuses paid to employees of the branch office in New York were entered as an expense of the " cordage department " of the home office in Philadelphia. Investments in Liberty bonds and United States Treasury certificates were entered as " book accounts " receivable, and the interest and profits of such investments were entered as " discounts." The defendant George F. Hoffman and his bookkeeper explained the reasons why many of the entries were made in a form which might be characterized as misleading. Their explanation satisfied the referee of the good faith of the defendants, and that the plaintiff was not harmed by these entries. The plaintiff still maintains that the result, and, perhaps, the purpose of these entries was to increase improperly other disbursements and expenses of the copartnership business and to conceal the true situation from the plaintiff. We have examined the testimony in the light of these claims, and we conclude that the evidence sustains, if indeed it does not compel, the inference that the entries were made in good faith, for legitimate purposes, and caused no injury to the plaintiff.

The plaintiff submitted to the referee one hundred and eighty-six proposed findings of fact. The defendants submitted one hundred and two. The referee passed upon all these proposed findings and embodied in his decision over one hundred findings which had been proposed by one side or the other. In the main he accepted the proposed findings of the defendants, exonerating them from charges of fraud, diversion or misappropriation of the funds of the copartnership, and accepted the proposed findings of the plaintiff sustaining charges that some of the entries were " false " or " misleading." We find no

inconsistency in these two groups of findings, though perhaps the language of some of the findings proposed by the plaintiff is harsher than the referee would have used if he had formulated them himself or which he did use in his opinion.

Among the conclusions of law in the decision are:

" 1. The plaintiff had the burden of proving fraud and has failed to so do."

" 4. The defendant George F. Hoffman has acted in good faith to the plaintiff in the conduct of the partnership business."

" 9. Plaintiff is not entitled to an accounting on any of the charges set forth in the complaint or in the bill of particulars, but inasmuch as the defendant was bound to the exercise of the utmost good faith in his dealings with his partner, and as some errors appear in the account and books examined on the trial, an accounting should be had within the limits hereinafter indicated."

" 20. The plaintiff is not entitled to any accounting from the defendant Frank E. Hoffman and the complaint should be dismissed as to Frank E. Hoffman with costs.

" 21. A judgment should be entered as provided in this decision, and I direct judgment to be made in accordance therewith."

After the decision of the referee was filed, his judicial determination of all questions of law and of fact was complete. Judgment might be entered upon that report by the clerk as a ministerial act. (Rules of Civil Practice, rule 198.) Before such a judgment was entered, the defendant George F. Hoffman made a motion at Special Term for an order sending the decision back to the referee and " directing the referee if the same be in his opinion conformable to the evidence introduced before him at the hearing had herein, to correct " certain alleged errors and omissions contained in the referee's report. Many, if not all, these alleged errors were plainly due to mistake or inadvertence in the preparation of the findings.

The moving affidavit states " that the relief asked for under this motion does not call for a change in any ruling by the referee upon the law, or alter the decision of the referee upon the merits."

The motion was granted and the report sent back to the referee. He took no further testimony, but, after hearing the parties, made many of the amendments requested by the defendants. Thereafter the referee upon the defendants' motion reconsidered his determination that the plaintiff was entitled to an accounting from his partner, George F. Hoffman. Then the referee changed his former ruling and decided that there had been an annual account stated, and no further accounting should be ordered between the partners. He filed a supplemental decision embodying some changes in the findings of fact and substituting for the conclusions of law which entitled the plaintiff to an interlocutory judgment for an accounting, new conclusions of law leading to the final conclusion that " the defendants Hoffman are entitled to judgment against plaintiff dismissing the complaint on the merits with costs, and the defendant George F. Hoffman is entitled to judgment on the counterclaim with costs." In his opinion, filed with the supplemental report, the referee explained the reason for the change: " I declined to find in my former decision that the accounts rendered annually had become accounts stated. I declined to hold the accounts to be accounts stated, because of the strong fiduciary relation existing between George F. Hoffman and the plaintiff. In view, however, of the decision of the Court of Appeals in *Rodkinson* v. *Haecker*, in 248 N. Y. 480, which was published after my former decision, I am convinced that the accounts rendered annually from 1916 down to and including 1924, to which no objection was ever made until just prior to the beginning of the action, became accounts stated."

The amendments, made by the supplemental decision, of the original findings of fact, in most instances, merely

correct errors plainly due to inadvertence. It is said that changes made in the form of four findings are substantial, and, at least' if an accounting were held, might carry important consequences. Even so, when these amended findings are read in the light of the original opinion of the referee, it becomes evident that the amendments merely correct errors or supply omissions in the original findings. In fact, in their original form argument might be made that they are inconsistent with other findings made by the referee. The result is a correct formulation of the referee's rulings on questions of fact, rather than a change of such rulings. Without such changes there would be some basis for the claim that some of the payments of copartnership moneys made by the defendants were wrongful and that some of the entries in the books were fraudulent. The amendments destroy the basis for such a claim, and make effective the decision of the referee that the plaintiff has received all the profits to which he is entitled. It is said that in one instance, at least, the referee, by his supplemental decision, inserted in a finding a statement of facts which he had originally excised from a proposed finding, and had expressly refused to find. In truth there is such difference in the facts which the referee refused to find and the facts which the referee subsequently inserted in the finding, that the rulings are consistent and both accord with the original intention of the referee.

We are agreed that the conclusions of law in the original decision, that no accounts were stated between the parties and that the plaintiff is entitled to an interlocutory judgment against George F. Hoffman for an accounting were erroneous. Doubtless because of fiduciary relationship existing between the parties, George F. Hoffman owed to the plaintiff the duty of exercising the utmost good faith in all his dealings, and must account to the plaintiff for all his acts. (*Marston* v.

*Gould,* 69 N. Y. 220; *Marvin* v. *Brooks,* 94 N. Y. 71.) None the less, when the partnership was formed the parties could by agreement determine the manner in which such an accounting should be had, and thereafter could, upon the statement of an account, fix by agreement the amount due to each. " An account stated is nothing more or less than a contract express or implied between the parties. * * * An account stated is conclusive upon the parties unless fraud, mistake or other equitable considerations are shown which make it improper to be enforced." So we stated in *Rodkinson* v. *Haecker* (248 N. Y. 480), and we pointed out that while a fiduciary relationship existing between two parties may be one of the circumstances which enter into a determination of whether from acceptance of an account, without objection, an agreement should be implied that the account is ·correct, it does not preclude parties who are capable of contracting with each other, from entering into such an agreement..

Doubtless at times, especially where there is a fiduciary relationship, accounts may be rendered without reasonable expectation that they will be scrutinized before they are accepted. Then mere silence and failure to object cannot be construed as an agreement upon the correctness of the accounts. We do not say that a partner is always called upon at his peril to investigate the correctness of ·a partnership account and to voice his objections promptly, if at all. Often, perhaps usually, partnership accounts are prepared and acted upon, without any intention or expectation that, unless objection is made within a reasonable time, they should be regarded as final and conclusive in fixing the rights and obligations of the parties. Here the parties have, however, expressly agreed with each other in the partnership contract that " the said copartnership shall once in twelve months or oftener if need require, upon the request of any one of them shall make and render each to the other * * * a true and

perfect account of all profits and increase by them made and all losses sustained * * * and the account so made shall and will clear, adjust, pay and deliver each unto the other at the time of making such account their equal shares of the profit so made as aforesaid." In language, perhaps, unduly invo ved, but nevertheless unequivocal, the parties have provided for an annual statement of account and an adjustment of their respective shares in accordance with the account so stated. Opportunity was provided for examination of the books, and for scrutiny of the accounts rendered. If the accounts were not " true and perfect," the plaintiff was called upon to object within a reasonable time; for the agreement contemplated that the account should " clear " and " adjust " the shares of the partners in the partnership property and profits. Here the conclusion that the parties intended to state an account rests not upon doubtful implication but upon express and unambiguous agreement.

The findings, as amended and, perhaps, in their original form, negative any possible claim that there was fraud or overreaching in the statement of the accounts, and establish that, in fact, there was no misappropriation or diversion of copartnership moneys in any transaction which the plaintiff has attacked, and that the adjustment of the shares of the partners, in accordance with the accounts, resulted in plaintiff receiving at least the share to which he is entitled. It follows that, as the referee recognized after he made his original decision, the plaintiff was entitled to no further accounting for the period for which accounts had been stated by the parties and, in view of the form of the action and the proceedings at the trial, was entitled to no further accounting for the short period thereafter during which the copartnership continued.

It does not follow that the referee had the power to correct his own error. " The rule has long been settled

and inflexibly applied that the trial court has no revisory or appellate jurisdiction to correct by amendment error in substance affecting the judgment. * * * It cannot correct judicial errors, either of commission or omission. * * * Clerical errors or mistake in the entry of the judgment or the omission of a right or relief to which a party is entitled as a matter of course may alone be corrected by the trial court through an amendment " (*Herpe* v. *Herpe*, 225 N. Y. 323.) There we spoke of an amendment of a judgment. The rule applies with equal force to the amendment of the decision of a referee upon which a judgment may be entered by the clerk. The referee had heard and determined the issues. His determination was embodied in a report and decision which carried direct and immediate legal consequences. His judicial functions had been completely performed. His judicial authority was then exhausted. He could not thereafter reconsider and change his judicial determination of the issues referred to him. Except in so far as the " supplemental " decision corrected palpable errors in the form of the findings, intended to embody the original determination of the referee, the supplemental decision was made without power and was without effect. The original decision with its erroneous conclusion remained in full force until corrected or set aside upon appeal. No judgment which failed to conform to that decision could properly be entered, even though a judgment which did so conform would have been tainted with the errors inherent in the decision.

We have said that the findings and conclusions set forth in the " supplemental decision " are sustained by the evidence and in accordance with law; yet no valid direction has ever been made for its entry by any judicial officer. Thus upon this appeal the question is presented whether the Appellate Division could remedy the errors contained in the referee's decision which the referee had no power to correct and could thus cure the infirmity in the

judgment under review. Though that question has not heretofore been presented to this court, its answer seems plain. Upon an appeal from a judgment, the Appellate Division " may reverse or affirm, wholly or in part, or may modify, the judgment," and the statute commands that " It shall thereupon render judgment of affirmance, judgment of reversal and final judgment upon the right of any or all of the parties, or judgment of modification thereon, * * * except where it may be necessary or proper to grant a new trial or hearing." (Civ. Prac. Act, § 584.) If the court reverses the judgment, it must determine what final judgment it shall render. The court cannot modify the judgment appealed from, for its infirmity does not lie in its form or substance but in the fact that it does not conform to the only effective decision of the referee. No new trial is proper or necessary, for there has been a careful and exhaustive trial, and upon the reversal of a judgment, the Appellate Division may if necessary make new findings to sustain the judgment it has awarded. (Rules of Civil Practice, rule 239.) It follows that upon a reversal of the judgment now under review the Appellate Division would be constrained to render the same final judgment upon the rights of the parties. Affirmance by the Appellate Division signifies its approval of the conclusions of law upon which the judgment rests and of the findings which sustain those conclusions. In this case at least, we may disregard the form of the judgment of the Appellate Division, for in purpose and effect the judgment of affirmance by the Appellate Division is identical with a judgment of reversal, and the rendering of a new final judgment determining the rights of the parties in the same way.

Here, as we have said, most, if not all, of the amendments to the findings, which the referee has made, merely correct palpable error in the formulation of the original findings. Such amendments the referee had power to make, even after his decision was complete. (*Herpe* v.

*Herpe, supra,* and cases there cited.) Even if, perhaps, the amendments made to four findings were beyond the power of the referee, it is evident that they merely correct errors and omissions in the formulation of the original decision, which the referee intended to make, to the effect that none of the profits of the business have been wrongfully diverted and all have been reflected in the accounts rendered. In approving the findings as amended, the Appellate Division was not called upon to substitute its judgment upon the weight of evidence for the judgment of the referee as expressed in his original decision, nor to choose between inconsistent determinations made by the referee; and there can be no doubt that the Appellate Division in affirming the judgment adopted the amended findings. The case would be different if the original decision contained any findings in favor of the plaintiff which are plainly inconsistent with the findings in favor of the defendants in their amended form. The appellant is entitled to the benefit of any findings which are sustained by the evidence; and perhaps we could not assume that the Appellate Division by its affirmance in effect reversed such inconsistent findings as against the weight of evidence. Perhaps indeed we should not assume that the Appellate Division adopted findings contained in the supplemental decision unless such findings plainly complemented other findings in the original decision. We do not now attempt to define the circumstances under which such an assumption may be accepted. We point out only that in this case the only reasonable inference to be drawn from the judgment of affirmance by the Appellate Division is that the court intended to adopt the findings embodied in the supplemental decision of the referee.

Nothing that we have said here is inconsistent with our decision in *Herpe* v. *Herpe* (*supra*). There a judgment in an equity action was entered, upon a decision of the court, which awarded no costs to the plaintiff. Thereafter the court made an order amending the judgment by

awarding costs previously withheld. The court had no power to reconsider its original decision which withheld costs. The attempt to amend the judgment by awarding costs was, therefore, futile. An appeal was taken from that part of the amended judgment which awarded costs, and this court reversed the amended judgment so far as appealed from. That left in full force and effect the original judgment entered upon the decision of the court at Special Term. We did not consider or decide whether upon an appeal from an amended judgment entered without authority an appellate court could review and vacate or modify the original judgment from which no appeal was taken. There was no need to consider that question for no infirmity in the original judgment was pointed out. We do not consider or decide that question now. Here only one judgment has been entered, and the appeal from that judgment brings up for review all the proceedings at the trial and the decision of the referee. An appellate court, if it reverses that judgment, must, as we have pointed out, render the appropriate final judgment upon the rights of the parties.

We have considered so far only the plaintiff's cause of action. Affirmance of the judgment dismissing the complaint still leaves open some questions which affect the validity of the judgment, in favor of the defendant George F. Hoffman upon his counterclaim, directing the plaintiff to transfer to the defendant all his right, title and interest in the property of the copartnership. The written contract of partnership provided that " It is further understood and agreed that should the party of the first part [Hoffman] * * * desire, at any time before the end of the term of this contract, to purchase the interest of the party of the second part [Corr] the party of the second part will assign, set over and transfer unto the party of the first part * * * all his right, title and interest in said copartnership by the paying to him * * * of a sum equal to his, the party of the

second part, share in the said business which share shall be determined by taking account of stock under the terms, manner and condition aforesaid." The referee has found upon sufficient evidence that the defendant George F. Hoffman has tendered to the plaintiff " a sum equal to his * * * share in the said business " determined by taking stock in the manner provided by the written contract. We have carefully considered the objections of the plaintiff to these findings. We find them without substance. There remains only the question of whether the parties in continuing the partnership after the expiration of the term of the written contract, by implication agreed to continue during the existence of the partnership at will, the right conferred upon George F. Hoffman, by the written contract, to purchase his partner's interest.

Upon the appeal from an interlocutory order denying a motion for judgment on the pleadings, the Appellate Division sustained the counterclaim in which Hoffman asserted the right to purchase his partner's interest upon the termination of the partnership at will. (*Corr* v. *Hoffman*, 219 App. Div. 278.) Though there is a dearth of direct authority in this country, the conclusion of the Appellate Division is sustained by reason as well as by the weight of judicial authority in England.

The rights and obligations of the partners as between themselves arise from and are fixed by their agreement. (*Martin* v. *Peyton*, 246 N. Y. 213.) Here, by written contract, the parties agreed to form a copartnership which should expire at the end of three years. Just as the partnership could arise only from an agreement (*London Assur. Co.* v. *Drennen*, 116 U. S. 461) so, after the expiration of its term, it could be continued only by agreement. Such an agreement need not be express; it may be implied in the conduct of the parties. Continuance of the partnership, by consent of the parties, though without express contract, may not evidence an intention to renew the partnership contract for another

fixed term; it does show an unmistakable intention to continue the existing partnership relations indefinitely, and since the existing relations are defined by the provisions of the written contract, the same provisions so far as applicable to a partnership terminable at will continue to govern these relations.

The rule has been variously stated by judicial and extrajudicial authorities. (See *Cox* v. *Willoughby*, L. R. 13 Ch. Div. 869.) In the Uniform Partnership Law it appears in the form: " When a partnership for a fixed term or particular undertaking is continued after the termination of such term or particular undertaking without any express agreement, the rights and duties of the partners remain the same as they were at such termination, so far as is consistent with a partnership at will." (Partnership Law; Cons. Laws, ch. 39, § 45.) However the rule may be formulated, in applying it we must remember that the rights or obligations of the partners, as between themselves, are continued by agreement and are not imposed by law; and the test is whether the partners in continuing the partnership relations tacitly excluded rights and duties defined by particular provisions of the original articles.

A right conferred upon one partner by written contract to purchase the partnership business at the termination or expiration of the partnership is applicable to and consistent with a partnership at will. (*Cox* v. *Willoughby*, L. R. 13 Ch. Div. 863; *Daw* v. *Herring*, L. R. [1892] 1 Ch. 284; *Essex* v. *Essex*, 20 Beav. 442.) True, here Hoffman's right to purchase his partner's share, according to the express provisions of the written contract, may be exercised only if Hoffman should so desire " *before the end of the term* " *of the contract,* and that language is not appropriate to a partnership at will. Even if that limitation of time had not been expressed in the original contract, it must have been read into the contract by necessary implication, for all rights and obligations of the

partners expired with the end of the term of the partnership. The problem is not whether the language of the provisions of the written contract defining the rights and duties of the partners during a fixed period is appropriate to a partnership terminable at will, but whether in essence such rights and duties are so consistent with or applicable to a partnership at will that the inference is reasonable that the parties intended that they should continue in force. (*Daw* v. *Herring*, *supra*; *Brooks* v. *Brooks*, 85 L. T. R. [N. S.] 453.) We do not say that in all circumstances a right of pre-emption of partnership property, contained in a written contract for a partnership for a fixed term, remains in force after the term has expired. Sometimes that right is coupled with conditions or stipulations which themselves make exercise of such a right inapplicable to a partnership at will. Then the inference may follow that the parties did not intend that the right should survive the expiration of the original term of the contract. (*Yates* v. *Finn*, 13 Ch. Div. 839; *Neilson* v. *Mossend Iron Co.*, 11 App. Cas. 298; *Clark* v. *Leach*, 8 L. T. R. [N. S.] 40.) Such cases do not militate against the conclusion that the test is whether the parties in continuing the partnership intended that the right of pre-emption accorded to one partner by the written partnership articles should survive. (See *Daw* v. *Herring*, *supra*.) We do not seek to distinguish or explain the decision of *Cookson* v. *Cookson* (8 Sim. 529). Its authority has been questioned by later decisions in England and in so far as it may be in conflict with those decisions has been expressly repudiated even there. (See *Essex* v. *Essex*, *supra*; *Brooks* v. *Brooks*, *supra*.)

Here the partnership for a fixed term was created to continue a business in which Hoffman was already engaged and which he owned or controlled. He was the sole managing partner in the business of the new copartnership. The right of pre-emption which was stipulated in the copartnership articles insured him the right to retain that business after the partnership expired. By con-

tinuing the copartnership after the expiration of its term without express excision of this stipulation, the parties impliedly retained it as one of the partnership terms, and it may be exercised upon the termination of the partnership. No other inference can reasonably be drawn here. The courts below properly held that the defendant George F. Hoffman still retained his right of pre-emption. Other objections to the judgment have been pressed upon us by the appellant. We must content ourselves with stating our conclusion that none furnish ground for reversal of that judgment.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., POUND, CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgment affirmed.