## WILLIAM E. DIXON v. TRINITY JOINT VENTURE ET AL.

[No. 1621, September Term, 1980.]

*Decided July 14, 1981.*

The cause was argued before Thompson, Melvin and Couch, JJ.

*Robert L. Fila* and *Charles C. W. Atwater,* with whom were *Atwater & Stone* on the brief, for appellant.

*Lawrence S. Greenwald,* with whom were *Gordon, Feinblatt, Rothman, Hoffberger & Hollander* on the brief, for appellees.

THOMPSON, J., delivered the opinion of the Court. MELVIN, J., dissents and files a dissenting opinion at page 389 *infra.*

In this case we are concerned with the duty of a general partner to give notice to limited partners concerning a business opportunity.

## I The Law

Justice Benjamin N. Cardozo, while the Chief Judge of the Court of Appeals of New York set out the standard in his usually eloquent manner when he said in *Meinhard v. Salmon,* 164 N.E. 545, 546 (N.Y. 1928):

> "Joint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty. Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. *Wendt v. Fischer,* 243 N.Y. 439, 444, 154 N.E. 303. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court."

The Supreme Court of Alaska drew a parallel between the relationship of partners to their partnership and the fidu-

ciary relationship of corporate officers and directors to their corporation in *Mathis v. Meyeres,* 574 P.2d 447, 448 (Alas. 1978):

> "The parties are not in disagreement concerning the law governing business opportunities among partners. They correctly acknowledge that what we said in *Alvest, Inc. v. Superior Oil Corporation,* 398 P.2d 213, 215 (Alaska 1965) regarding the fiduciary relationship of corporate officers and directors to their corporation applies to the parallel relationship between partners and their partnership:
>
> 'A corporate officer or director stands in a fiduciary relationship to his corporation. Out of this relationship arises the duty of reasonably protecting the interests of the corporation. It is inconsistent with and a breach of such duty for an officer or director to take advantage of a business opportunity for his own personal profit when, applying ethical standards of what is fair and equitable in a particular situation, the opportunity should belong to the corporation. Where a business opportunity is one in which the corporation has a legitimate interest, the officer or director may not take the opportunity for himself. If he does, he will hold all resulting benefit and profit in his fiduciary capacity for the use and benefit of the corporation.' "

At this point it may be well to look at the Maryland Code with reference to the duty of a general partner in an ordinary partnership, set out in Md. Corp. & Ass'ns. Code Ann. § 9-404 (a) as follows:

> "Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct, or liquidation of the partnership or from any use by him of its property."

The particular duty with reference to limited partnerships is contained in § 10-108:

> "A general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners, . . . ."

Maryland cases, although they do not address the precise question before the Court, approve the principles we have quoted. *See, Herring v. Offutt,* 266 Md. 593, 295 A.2d 876 (1972), and *Allen v. Steinberg,* 244 Md. 119, 223 A.2d 240 (1966), in which it was said that managing partners of a limited partnership owe a special duty:

> "A partner is a trustee to the extent that his duties bind him, a cestui que trust as far as the duties that rest on his copartners. 1 Rowley, *Modern Law of Partnership,* §§ 341-42; *Restatement, Restitution* §§ 166 comment d, 190 comment a; 68 C.J.S. *Partnership* § 76; 40 Am. Jur. *Partnership* § 128; *Hagan v. Dundore,* 187 Md. 430. These authorities which consider the matter also hold that generally the principle of utmost good faith covers not only dealings and transactions occurring during the partnership but also those taking place during the negotiations leading to the formation of the partnership. See also *Knapp v. First National Bank and Trust Co.* (10th Cir.), 154 F.2d 395, 398; *Stephens v. Stephens* (Ky.), 183 S.W.2d 822, 824. *Managing partners particularly owe a fiduciary duty to inactive partners. Corr v. Hoffman* (N.Y.), 176 N.E. 383; *Einsweiler v. Einsweiler* (Ill.), 61 N.E.2d 377." (Emphasis added). *Id.* at 128.

The principles were reiterated in *Impala Platinum v. Impala Sales,* 283 Md. 296, 324, 389 A.2d 887 (1978):

> "A fiduciary relationship 'carries with it the requirement of utmost good faith and loyalty and the obligations of [the fiduciary] to make full disclosure of all known information that is significant

and material to the affairs ... of [the fiduciary relationship] ... "the principle of utmost good faith covers not only dealings and transactions occurring during the [fiduciary relationship] but also those taking place during the negotiations leading to the formation of the [fiduciary relationship]." *Allen v. Steinberg, supra* at 128'; *Herring* at 597."

*See also, Levin v. Levin,* 43 Md. App. 380, 390, 405 A.2d 770 (1979). In *Faraclas v. City Vending Co.,* 232 Md. 457, 463-64, 194 A.2d 298 (1963) the Court said:

> "This Court has long recognized as a corollary to the law of a corporate officer's and director's fiduciary duty, that, when presented with a business opportunity to fulfill a corporate purpose, he should take advantage of it, not for himself, but for the corporation. See *Acker, Merrall & C. Co. v. McGaw,* 106 Md. 536. . . ."

> "Of course, a corporation, as such, has no interest in its outstanding stock or in dealings therein by its officers, directors or shareholders. If there is a struggle for control the corporation would normally occupy a neutral position. But in the case at bar the Company had a direct interest in acquiring the assets of a solvent partnership in order to pay its creditors. The condition, to which everyone agreed, was that the Wilbur stock be redeemed so that the partners might not be required to share future profits with shareholders outside the family. When John purchased the Wilbur stock for his own account, he frustrated a valid corporate purpose that had been invalidly consummated. We agree with the Chancellor that this was a breach of his fiduciary duty under the circumstances."

## II The Facts

We adopt as our own the finding of facts made by the chancellor, all of which are supported by the evidence:

"The Plaintiffs, Trinity Joint Venture, et al, (Trinity), [appellees], filed a Bill of Complaint alleging that the Defendant, William E. Dixon, (Dixon), [appellant], breached his fiduciary duties by failing to inform Trinity that a certain ten (10) acre tract of land was for sale and by buying the said land for his own profit through entities which he owned and controlled. As a means of redress, the Plaintiffs seek an accounting for all profits made by the Defendant, Dixon, together with damages. The Defendant, in his Answer to the Bill of Complaint, denies any breach of his fiduciary duties and prays that the Bill be dismissed.

"The events leading up to this cause of action are as follows: At all pertinent times, the Plaintiff, Trinity, existed as a limited partnership of which the Defendant, Dixon, was a general and managing partner. Trinity had been formed 'to hold, operate and lease the real property acquired by the partnership.'

"Pursuant to the purposes of the partnership, Trinity developed a shopping center known as East Park Center on a certain tract of land located near Crain Highway and Maryland Route 3 in Anne Arundel County. Adjacent to and north of East Park Center was a ten (10) acre tract of undeveloped land owned by the Holy Trinity Roman Catholic Congregation. In order to obtain the approval of the County Planning and Zoning Board for development of the shopping center, Trinity agreed with County authorities to construct a road known as East Park Drive through East Park Center. The County's primary reason for requiring the road was to provide access to the said ten (10) acre tract which otherwise would be landlocked by East Park Center and the Glen Burnie Park Improvement Association. A secondary purpose for the required road was to provide service to the 7.221 acre tract abutting the west of East Park Drive.

"On or about September 19, 1973, John A. Cade entered into an agreement with the Holy Trinity Roman Catholic Congregation to purchase the ten (10) acre tract abutting East Park Center for $100,000. Shortly thereafter, Mr. Cade informed the Defendant, Dixon, that he now controlled the ten (10) acre tract. Mr. Cade previously had been associated

with Mr. Dixon as an employee (officer) of Monumental Title Company which was owned and controlled by Dixon and his immediate family and also had served as a consultant to Trinity. However, due to 'bad feelings' between Mr. Cade and Mr. Larkin, a limited partner of Trinity (also a Plaintiff in this action), Mr. Cade's services were dispensed with by the partnership.

"Testimony at the hearing by both Mr. Cade and the Defendant, Dixon, revealed that Dixon suggested that the ten (10) acre tract be offered to Trinity but Mr. Cade refused to follow through on the suggestion since he did not want to have any business dealings with Trinity.

"Subsequently, on or about September 26, 1973, Mr. Cade assigned his right to purchase the ten (10) acre tract to Landco Limited Partnership (Landco Ltd.).

"Testimony at the hearing showed that Landco Ltd. was a partnership formed for the purpose of providing retirement benefits for the employees of Monumental Title Company which held a 70% limited partnership interest in Landco Ltd. The remaining 30% interest was held by Landco Inc. as a general and limited partner. Testimony further adduced that Monumental Title Company is an entity in which Dixon along with his then wife jointly owned a two-thirds interest and his son owned the remaining one-third interest. With regard to Landco Inc. it was shown that the Board of Directors consisted of Dixon, Arlene T. Corbin (Dixon's personal secretary) and Mr. Cade. Dixon testified that he frequently appointed Ms. Corbin, his secretary, as an officer or director of his 'corporations' and that she never voted against his wishes. In effect then Dixon controlled two of the three board positions of Landco Inc. Additionally, Dixon stated at the hearing that all capital for Landco Ltd. was advanced by Monumental Title Company.

"Once Landco Ltd. obtained the right to purchase the ten (10) acre tract, it continued to hold it from September 26, 1973 to February 22, 1974 when Landco Ltd. then assigned its right to purchase to Dick Rice, Inc. for $200,000. Dixon testified at the hearing that the profit made by Landco Ltd. on the assignment was between $60,000 and $65,000. Dixon

by way of his Post-Trial Memorandum states that the profit obtained was $59,000. Dick Rice, Inc. subsequently obtained title to the ten (10) acre tract on March 15, 1974 and obtained a purchase money mortgage guaranteed by the Defendant, Dixon.

"It is clear from the facts that Dixon became aware of the availability of the ten (10) acre tract in July 1973 when Mr. Cade informed him that he (Cade) had the right to purchase the tract. From July 1973 to September 1973, the ten (10) acre tract remained in the control of Mr. Cade. With the exception of the testimony of Mr. Baldwin, a general partner in Trinity, the facts and evidence indicate that Dixon did not inform Trinity of the availability of this property during this time. Then, in September 1973, Landco Ltd. obtained the right to purchase the ten (10) acre tract from Mr. Cade and held it until February 1974 when Landco Ltd. transferred its right to purchase to Dick Rice, Inc. for $200,000. Again, during these months Dixon did not inform Trinity of the availability of the ten (10) acre tract.

"The Plaintiffs allege that the ten (10) acre tract in question was of critical importance to the interest of Trinity. They assert that if Trinity were able to obtain ownership over the ten (10) acre tract it potentially could have avoided building the road known as East Park Drive in connection with the development of East Park Center. In support of this contention, the Plaintiffs offered the testimony of Florence Kurdle, a director within the Anne Arundel County Planning and Zoning Office. Mrs. Kurdle testified that East Park Drive was required by the County primarily to provide access to the ten acre tract in order to prevent it from becoming land-locked upon development of East Park Center. Mrs. Kurdle further stated that given the situation where the ten (10) acre lot was deeded to the Glen Burnie Park Improvement Association it would no longer be land-locked since access would have been through other land owned by the Association and that in this instance the County may not have required construction of East Park Drive. The Plaintiffs allege that an inference can be drawn from Mrs. Kurdle's testimony which strongly suggests that

had access to the ten (10) acre tract been made available through other means then the County would not have required construction of East Park Drive. In any event, the Plaintiffs contend that had Trinity had the opportunity to acquire the ten (10) acre tract, it may have been able to avoid construction of the road by either retaining the tract or deeding it to the Glen Burnie Park Improvement Association, and could have utilized the land upon which the road is situated for other purposes."

The chancellor found that there was a fiduciary duty owed by the appellant, William E. Dixon, to the plaintiffs, Trinity, and awarded damages in the amount of profits that Landco Ltd. made on the sale of the real estate. We agree with the chancellor, Judge Eugene M. Lerner, sitting in the Circuit Court for Anne Arundel County.

## III Appellant's Contentions

Appellant makes a number of arguments on appeal, the general thrust of which is that limited partners are entitled to no more rights than are specifically set out in § 10-109.[1] In making the argument he ignores that portion of the statute which we have set out above which imposes upon a partner the same duties as those imposed on other fiduciaries. He further argues that to have given the partners proper notice would have been allowing them to participate in determining whether to purchase the real estate or not and that having given notice to the other general partner, Thomas I. Baldwin, his duty was complete,

---

1. "§ 10-109. *Rights of a limited partner.*

(a) A limited partner shall have the same rights as a general partner to:

(1) Have the partnership books kept at the principal place of business of the partnership, and at all times to inspect and copy any of them;

(2) Have on demand true and full information of all things affecting the partnership, and a formal account of partnership affairs whenever circumstances render it just and reasonable; and

(3) Have dissolution and winding up by decree of court.

(b) A limited partner shall have the right to receive a share of the profits or other compensation by way of income, and to the return of his contribution as provided in §§ 10-114 and 10-115 of this title."

It should be noted that Chapter 801, Laws of Maryland, 1981 amended the statute on limited partnerships.

particularly when the two general partners decided that in view of the partnership's financial condition at the time, they would not have agreed to the purchase. We think Judge Cardozo gave the answer to this argument in *Meinhard v. Salmon, supra,* when he said at 547:

"The trouble about his conduct is that he excluded his coadventurer from any chance to compete, from any chance to enjoy the opportunity for benefit that had come to him alone by virtue of his agency. This chance, if nothing more, he was under a duty to concede. The price of its denial is an extension of the trust at the option and for the benefit of the one whom he excluded.

"No answer is it to say that the chance would have been of little value even if seasonably offered. Such a calculus of probabilities is beyond the science of the chancery. Salmon, the real estate operator, might have been preferred to Meinhard, the woolen merchant. On the other hand, Meinhard might have offered better terms, or reinforced his offer by alliance with the wealth of others. Perhaps he might even have persuaded the lessor to renew the Bristol lease alone, postponing for a time, in return for higher rentals, the improvement of adjoining lots."

We do not hold that the general partner in the partnership here involved was obligated to disclose to his partners all other real estate developments in which he became engaged during the life of the partnership.[2] We agree that simply because the property herein involved adjoined partnership property as in *Mathis v. Meyeres, supra,* notice to the other partners would not have been required. The property in the instant case, however, was more than adjoining property. Restrictions for its benefit had been imposed on the partnership property at the time of its purchase.[3] In addition, there

---

**2.** It is apparent that all of the parties here involved were also involved in other development schemes outside of this particular partnership.

**3.** The appellant, recognizing this, voluntarily arranged for the release of those conditions while the property was held by his nominee.

was evidence, which was apparently accepted by the chancellor, that had the partnership been able to acquire the property purchased by Dixon, it would have been able to avoid the expense of building a road which the county required as a condition of development of the partnership property. These facts in our view make the opportunity to purchase the adjoining property a "partnership opportunity." The appellant's attempt to assign to the limited partners only the very strict express rights set out in the statute and to ignore that portion of the statute which says in effect that the managing partner has fiduciary duties, cannot prevail.

We, like the chancellor, are not impressed with the appellant's suggestion that the whereas clauses of the partnership agreement limited the general purposes of the partnership as set out in the body of the agreement.

Finally, the appellant argues that the chancellor erred in holding that Baldwin, a general partner, was not a necessary party to the suit. The argument is without substantial merit because Baldwin was a party to the suit under Md. Cts. & Jud. Proc. Code Ann. § 6-406 (a) and (b) which provide as follows:

> "(a) An unincorporated association, joint stock company, or other group which has a recognized group name may sue or be sued in the group name on any cause of action affecting the common property, rights, and liabilities of the group."

> "(b) An action under this section:
> (1) Has the same force and effect with respect to the common property, rights, and liabilities of the group as if all members of the group were joined. . . ."

*Decree affirmed.*
*Appellant to pay the costs.*

*Melvin, J., dissenting:*

Because I disagree with the result reached by the majority in this case, I respectfully dissent.

The graveman of the plaintiffs' complaint against the defendant Dixon is that he breached his fiduciary duty to the limited partnership by "failing to inform Trinity [the limited partnership] that the ten acre tract was for sale and [by not] taking steps to purchase it for Trinity", and that by purchasing the ten acre tract for his own account he wrongfully deprived Trinity of "a partnership opportunity."

In my view, the plaintiffs failed to prove these allegations for the following reasons:

1. The purchase of the ten acre tract was beyond the scope of the purpose for which the partnership was formed. The written partnership agreement entitled "Trinity Joint Venture Limited Partnership Agreement," clearly sets forth that the purpose of the partnership was to "hold, operate, improve and lease" only the specific 33.93 acres of real estate mentioned in the agreement. That it *may* have been advantageous to Trinity to own the extra ten acre tract does not enlarge that purpose. Thus, the availability of the ten acre tract was not a "partnership opportunity" within the meaning of that doctrine. It should be noted that Dixon did, acting in the best interests of the partnership, achieve the release of restrictions against the 33.93 acres of partnership property that had been imposed in favor of the ten acre tract.

2. Assuming that the availability of the ten acre tract presented a "partnership opportunity", that availability was made known by Dixon to the only other general partner, Thomas I. Baldwin. Baldwin, who is not a named party to this action, testified in unequivocal terms that it would have been "ridiculous" for Trinity to have purchased the ten acres under the circumstances, citing the fact that the partnership was already in arrears on a $400,000 mortgage indebtedness, that the ten acre tract was not zoned for commercial development, and that to have acquired the ten acres and eliminated the road through the 33.93 acres would have required a substantial delay in the shopping center project. Dixon was of the same opinion. The partnership agreement provided that as general partners, Dixon and Baldwin, were to be "the managing partners of the Limited Partnership for the purposes of handling *all* transactions, directions and

instructions in connection with the development *of the property"* (emphasis added), and that, "no Limited Partner shall participate in the management of the Partnership business." There are no allegations of fraud or collusion on the part of either of the general partners. Thus, we have a situation where both managing partners, although fully aware that the ten acre tract was for sale, exercised their business judgment not to avail themselves of the opportunity to attempt to buy the property for Trinity. That the limited partners may disagree with that judgment is, in the absence of fraud or bad faith, totally irrelevant to the issues in this case.

Under these circumstances, I do not agree that Dixon's failure to notify the limited partners that the ten acres were for sale, or that the acquisition of the ten acres by another entity in which Dixon had a controlling interest, constituted a breach of his fiduciary duty to the Trinity limited partnership or the individual limited partners thereof.

The majority's reliance upon *Meinhard v. Salmon,* 164 N.E. 545 (N. Y. 1928) is misplaced. That case involved a dispute between general partners and not, as in this case, a dispute between limited partners and a general partner. I find nothing in *Meinhard* to support a holding that a general partner is guilty of breach of his fiduciary duty when he takes advantage of a partnership opportunity for his own account after the managing partners with knowledge of the opportunity decline for business reasons to take it for the partnership. *See* W. Fletcher, Cyclopedia of the Law of Private Corporations § 862.1 (rev. perm. ed. 1975).