45 A.3d 883

**EBENEZER UNITED METHODIST CHURCH**

v.

**RIVERWALK DEVELOPMENT PHASE II, LLC, et al.**

**No. 2852, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

June 6, 2012.

Stephen S. Burgoon, Frederick, MD, for appellant.

Stuart J. Snyder, Baltimore, MD, for appellee.

Panel: MATRICCIANI, WATTS and JAMES R. EYLER (Retired, Specially Assigned), JJ.

MATRICCIANI, J.

On August 19, 2009, Ebenezer United Methodist Church ("Ebenezer United") filed a *lis pendens* action in the Circuit Court for Harford County, naming as defendants the present appellees, Riverwalk Development Phase Two LLC, Synvest REIT, William Green, and The William Green Family Trust. At the conclusion of a bench trial held January 12, 2011, the court entered judgment in favor of appellees. Ebenezer United noted this timely appeal on February 10, 2011.

### QUESTION PRESENTED

Ebenezer United's brief presents the following question for our review, which we have edited to comport with our discussion:

Did the trial court err by ruling that appellees did not breach their fiduciary obligations not to usurp corporate opportunities? [1]

---

1. In its brief, Ebenezer United phrased the question, thusly:
   DID THE TRIAL COURT MISAPPLY THE LAW BY RULING THAT THE DEFENDANTS DID NOT BREACH A FIDUCIARY DUTY OR VIOLATE THE DOCTRINE OF CORPORATE OPPORTUNITY, THOUGH THEY ADMITTED FAILING TO INFORM THEIR BUSINESS PARTNERS OF A BUSINESS OPPORTUNITY AND KEEPING THE OPPORTUNITY FOR THEIR BENEFIT?

For the reasons that follow, we answer no and we affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL HISTORY

William Green is a real estate developer and, at the times relevant to this suit, was president and part-owner of Synvest Real Estate Investment Trust. Synvest's practice was to hold undeveloped property in its own name while it arranged construction financing, then transfer the property to a newly-created limited liability company once the funds had been secured and development could begin. In the course of this business, Synvest came to own certain properties in Harford County that it prepared for construction and conveyed to a wholly-owned subsidiary known as the River Walk Development Limited Liability Company ("Riverwalk One"). In July of 2002, Ebenezer United purchased a fifty-percent interest in Riverwalk One for $250,000.00, and construction commenced soon afterwards.

At some point in time before Ebenezer United consummated its investment in Riverwalk One, it learned that Synvest had come to own a 32–acre parcel now at the center of this dispute—as well as six additional lots—elsewhere in Harford County. Mark Vincent, Ebenezer United's pastor, testified that Green had "alluded to" the 32–acre parcel and that "part of the attraction for us in investing with Mr. Green through Riverwalk One on the initial four lots was there was some thought we would have the option to reinvest in building out the additional six lots that [Green] said he owned; and, also, even more importantly, develop, look at a major development on the 32–acre parcel."

On January 10, 2003, Synvest formed River Walk Development Phase Two, LLC ("Riverwalk Two"), which purchased the 32–acre parcel on or about January 22, 2003.[2]

---

2. At the time of trial, no construction had begun on Riverwalk Two other than to install sewer and water lines.

On or about March 26, 2004, Green caused Riverwalk One, Riverwalk Two, and a third entity known as Green Spring Valley Overlook, to enter into an agreement by which Regal Bank & Trust ("Regal") extended a $2.1 million dollar line of credit to the three entities, collectively. By the same agreement, the entities conveyed deeds of trust to their properties to secure the collective line of credit.

Riverwalk One developed and sold several units and conveyed the proceeds to Ebenezer United. In 2006, Synvest repurchased Ebenezer United's interest for an unknown amount. Ultimately, Ebenezer United profited between $30,000.00 and $35,000.00 on its $250,000.00 investment. Only after this business had concluded did Ebenezer United learn of the security agreement that had encumbered the Riverwalk One assets.

On August 19, 2009, Ebenezer United and Riverwalk One filed suit against Green, Synvest, Riverwalk Two, and The William Green Family Trust, in the Circuit Court for Harford County. The court conducted a bench trial on January 12, 2011.

Green testified that at the time of the security agreement consummated March 26, 2004, Riverwalk One required financing to complete construction. According to his testimony, Regal would not extend credit to Riverwalk One unless all owners with at least a ten percent interest acted as guarantors, and Ebenezer United could not guarantee the loan as a non-profit organization. Green testified that because Regal had already extended a line of credit to Riverwalk Two and Green Spring Valley Overlook, the best course of action for Riverwalk One was to draw from that line of credit, notwithstanding the fact that this required Riverwalk One's property to serve as partial collateral for the three entities' collective line of credit.

After evidence had closed, the court issued its ruling from the bench and explained the basis of its decision to grant judgment for appellees:

[T]here really is no issue with respect to the 32 acres that were purchased before the plaintiff's involvement with Synvest and Riverwalk One. I can't really find that just because there was a managing interest by Mr. Green in Riverwalk Two, in adding Riverwalk One to the financing agreement in order to complete that, that sort of expands an interest for the church in this case, and Riverwalk One into the benefits that Riverwalk Two had gained in this case.

Riverwalk One was added to the line of credit at the bank's behest in order to expand the line of credit, but the main purpose of that was also in Riverwalk One's interest in order to complete it. But just because it started out mainly as a line of credit in order to allow Riverwalk Two to be completed, doesn't, therefore, mean that Riverwalk One gets to share in those additional benefits in this case.

The parties filed no post-trial motions, and Ebenezer United timely noted this appeal on February 10, 2011.

### DISCUSSION

██ Ebenezer United argues that appellees breached their fiduciary duties "by failing to disclose the additional real estate transaction involving a new, 32–acre parcel, transferring it secretly to Riverwalk II, a new entity solely owned by its President, William Green." This argument begins from the correct legal premise that "managing members of LCCs owe common law fiduciary duties to the LLC and to the other members," *Wasserman v. Kay*, 197 Md.App. 586, 616, 14 A.3d 1193 (2011) (citing *Insurance Co. of North America v. Miller*, 362 Md. 361, 373, 765 A.2d 587 (2001)), including the duty not to exclude principals from corporate opportunities, *Pittman v. American Metal Forming Corp.*, 336 Md. 517, 522–524, 649 A.2d 356 (1994).

██ Maryland courts examine alleged corporate opportunities under the interest or reasonable expectancy test, which we described in *Shapiro v. Greenfield*, 136 Md.App. 1, 16, 764 A.2d 270 (2000) (citing *Independent Distribs. v. Katz*, 99 Md.App. 441, 458, 637 A.2d 886 (1994)):

This test focuses on whether the corporation could realistically expect to seize and develop the opportunity. If so, the director or officer may not appropriate it and thereby frustrate the corporate purpose. If the opportunity is a corporate one, then the director or officer to whom it is presented or who becomes aware of it must first present it to the corporation, before pursuing it himself. Only if the corporation rejects the opportunity may a director or officer exploit it for his own benefit.

*Shapiro*, 136 Md.App. at 16, 764 A.2d 270 (internal citations and quotation marks omitted). Ebenezer United does not cite or discuss the interest or reasonable expectancy test. Instead, Ebenezer United argues that the collective security agreement established a corporate opportunity, *ipso facto*. For the reasons that follow, this argument fails because it conflates *financial* self-dealing with usurpation of a *corporate opportunity*, with only the latter having been pled and argued on appeal.

Assuming Ebenezer United could have proven that the disputed financing arrangement was illegal,[3] it would not matter whether appellees had used the proceeds of that transaction to pay for personal vacations, issue a dividend,

---

**3.** Ebenezer United argues that appellees unnecessarily put Riverwalk One's assets at risk to benefit the Riverwalk Two and Green Spring Valley Overlook projects in violation of both the operating agreement's conditions that financing be "necessary" and appellees' fiduciary duty of loyalty. Appellees, on the other hand, argue that the reverse is true and that *Ebenezer United* benefitted from a line of credit that would not have been available but for the pooled security, making it necessary, and that the terms of the transaction were favorable to Riverwalk One. But there is no real conflict between these two propositions because, as the trial court rightly found, they are not mutually exclusive. The security agreement undoubtedly imposed exogenous risks on all three entities (*i.e.,* the risk that the other two would fail), but it also provided benefits *to all three entities* in the form of increased access to capital. Additionally, each lot in Riverwalk One was released from the security agreement when it was sold, so that the risk endured no longer than necessary for development of Riverwalk One's assets. Thus, the fact that the security agreement exposed Riverwalk One to risk from the other projects while benefitting other entities does not eliminate the possibility that the transaction was the best possible necessary financing arrangement for Riverwalk One.

repurchase stock, or to finance the other construction projects (as alleged). In any of those circumstances, appellees would have been guilty of self-dealing in violation of their fiduciary duty of loyalty because they benefitted at Ebenezer United's expense. *See Cede & Co. v. Technicolor,* 634 A.2d 345, 361–63 (S.Ct.Del.1993) ("[T]he duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally."). But the question of whether the *financing* arrangement was *self-dealing* is independent of whether appellees *excluded* Ebenezer United from a *corporate opportunity.* The development project would (allegedly) constitute a usurped corporate opportunity regardless of its financing, and the financing would (allegedly) constitute self dealing regardless of how the proceeds were used.

In this case, the allegations of financial self-dealing and corporate opportunity align in one transaction by mere happenstance; and because Ebenezer United failed to argue or prove the former, its case turns on whether the trial court erred when deciding the singular question of corporate opportunity. There being no relevant disputed facts, this is a question of law that must be reviewed *de novo. Dickerson v. Longoria,* 414 Md. 419, 433, 995 A.2d 721 (2010).

We therefore turn to the issue of corporate opportunity, which we addressed under similar circumstances [4] in *Dixon v. Trinity Joint Venture,* 49 Md.App. 379, 388–89, 431 A.2d 1364 (1981), and held that a corporate "interest or expectancy" requires something more than the mere opportunity to develop a neighboring parcel of land:

> *We do not hold that the general partner in the partnership here involved was obligated to disclose to his partners all other real estate developments in which he became engaged during the life of the partnership.* We agree that simply because the property herein involved adjoined partnership

---

4. *Dixon* was a dispute over church lands, a subject of controversy since at least the time of Henry VIII.

property as in *Mathis v. Meyeres,* [574 P.2d 447, 448 (S.Ct.Alas.1978)], notice to the other partners would not have been required. The property in the instant case, however, was more than adjoining property. Restrictions for its benefit had been imposed on the partnership property at the time of its purchase. In addition, there was evidence, which was apparently accepted by the chancellor, that had the partnership been able to acquire the property purchased by Dixon, it would have been able to avoid the expense of building a road which the county required as a condition of development of the partnership property. These facts in our view make the opportunity to purchase the adjoining property a "partnership opportunity." The appellant's attempt to assign to the limited partners only the very strict express rights set out in the statute and to ignore that portion of the statute which says in effect that the managing partner has fiduciary duties, cannot prevail. (Emphasis added.)

■ *Dixon* thus establishes that a fiduciary owes it principals no general duty to disclose or to offer participation in other real estate development opportunities. A corporate opportunity requires something more than superficial similarity between the projects.[5] *Dixon* presented such additional facts, but this case does not. First, the disputed development opportunity in *Dixon* presented a *direct benefit* to the original investment because it would have created significant cost savings for the primary project. Here, however, there is no evidence that the Riverwalk Two development had—or would have had—any effect on the value of the Riverwalk One project. Second, while the encumbrance in the present case is

---

5. We note that a carefully-drafted operating agreement with a limited purpose could have avoided the present litigation. Here, rather than limit the corporate purpose to development of the Riverwalk One property, its operating agreement authorized the LLC "to engage in any lawful act or activity in which the Company may engage." That said, the operating agreement *itself* does not weigh in favor of Ebenezer United because it mentions no properties other than the member's initial capital contributions, which were the lots eventually developed and sold as Riverwalk One—*not* the 32–acre parcel.

analogous to the "restrictions" imposed on the partnership property in *Dixon*, the restrictions in *Dixon* were imposed for the *direct and exclusive benefit* of the adjacent property. Here, the trial court found that the security agreement benefitted the Riverwalk One project and was merely an efficient financial consolidation. As such, the arrangement was analogous to consolidated *management;* and as *Dixon* holds—and common sense surely dictates—projects related by management are not automatic mutual corporate opportunities. Joint financial risk is simply too common to give rise to any particularized interest or expectancy.

In short, a reasonable expectation or interest in a corporate opportunity requires something more than mere "proximity" of geography and management, as in *Dixon*, or of finance, as in this case. For the foregoing reasons, the trial court did not err when it held that appellees did not usurp a corporate opportunity.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**