## FARACLAS *v.* CITY VENDING COMPANY

[No. 34, September Term, 1963.]

458

*Decided October 14, 1963.*

*Motion for rehearing filed November 13, 1963, denied November 15, 1963.*

The cause was argued before Brune, C. J., and Henderson, Prescott, Horney and Marbury, JJ.

*Konstantine J. Prevas* for the appellant.

*Frank T. Gray,* with whom was *William L. Balfour* on the brief, for the appellee.

Henderson, J., delivered the opinion of the Court.

John E. Faraclas, an officer and director of the City Vending Company, a Maryland corporation, brought suit to compel the Company to transfer on its books twenty shares of its stock, the certificate for which, duly endorsed to him, had been tendered for transfer. City Vending Company filed an answer and

counterclaim seeking delivery of the stock for cancellation, on the ground that the complainant had violated the fiduciary duty he owed the Company by acquiring the stock at a time when the Company had a declared policy to acquire it for itself. By a supplemental bill the complainant claimed that he was entitled to one-half of the shares standing in the name of Nick Mallis, and amended the original bill so as to seek alternative relief. The Chancellor found against the complainant and dismissed the bill and supplemental bill. He enjoined the complainant to deliver the stock to the Company for cancellation upon payment to the complainant of the purchase price. The appeal is from that decree.

The case arises out of a transaction consummated in 1957, whereby the City Vending Company acquired all of the assets of the Shipyard Restaurant partnership. The restaurant business, a concession of the Bethlehem Steel Company at Sparrows Point, had been founded by Nick Mallis in 1943 and operated by him, his son Michael, and his son-in-law John Faraclas, but in March of 1957, Michael and John had been given or had acquired Nick's share, and they were the sole and equal partners. Nick, Michael and John were stockholders in City Vending Company, a corporation chartered in 1951 which had operated consistently at a loss. The original stockholders had also included Charles H. Wilbur and Joseph T. Schwartz. They each acquired 20 shares of stock valued at $750.00, representing the value of assets delivered to the corporation. Nick, Michael and John had paid $750.00 each for 20 shares of the stock. Wilbur died in Texas in 1956. In March 1957, Schwartz sold his 20 shares, 10 shares to Michael and 10 to John. In April 1957, the Company purchased all of the business and assets of the Shipyard Restaurant. Two thousand shares were issued to Michael and a like amount to John. Nick retained his twenty shares.

The purpose of the transaction was to take advantage of the tax loss to be carried forward for five years with substantial tax savings for the partners and the Mallis family as a whole. The Chancellor found as a fact that it was a condition of the sale that the interests of non-family shareholders should be acquired, so that no outsider should share in the profitable op-

eration of the restaurant. His finding was based on the testimony of Michael, supported by the testimony of the accountant, Mr. Queen. Although John denied that the acquisition was a condition to the transaction, he received and paid for one-half of the Schwartz stock, and, as secretary of the Company he signed minutes of a meeting of the directors held on March 11, 1957, purporting to redeem the Wilbur stock, by resolution having the unanimous approval of the directors, who were also the officers and stockholders.

This purported redemption, as the Chancellor found, was a nullity. The attorney for the Company communicated with Mrs. Wilbur, but she was unable or unwilling to produce the stock certificate at that time. The attorney then undertook to put through an amendment to the by-laws of the Corporation, by adding a new by-law 4A, providing that the Company might at any time redeem the stock of any stockholder at its book value. The Company was insolvent at the time and no proper notice of the purported amendment was given. The impropriety was accentuated by an attempt to have the purported amendment appear to have been a part of the original by-laws. Pursuant to this by-law, notice was sent to Wilbur at his last known address and by appropriate corporate action and resolution the stock was marked "cancelled" on the Company books. Michael and John were told by the attorney that the cancellation was of doubtful legality, but might serve as a practical solution since the stock was worthless and it was unlikely that the transaction would ever be challenged. To take full advantage of the loss carry-over provisions it was necessary to take prompt action. Following the action taken Michael and John were shown on the Company books as each owning 2030 shares, Nick was shown as owning 20 shares, and the 20 shares of Wilbur were shown as cancelled.

In 1960 differences developed between John and the Mallis family because of a rift between John and his wife. John maintained his position as Vice-President and Secretary, and as a director of the Company, but as a practical matter the management was taken over by Michael. In that same year Nick had his twenty shares transferred into the joint names of Michael and Nick, as joint tenants, with survivorship. In 1961 John was

advised by new counsel that the redemption of the Wilbur shares was invalid. He located Mrs. Wilbur and acquired her husband's stock certificate for $250.00. It is conceded that this was a valid acquisition as between him and Mrs. Wilbur, who was represented by counsel. The Chancellor found, however, that John owed a fiduciary duty to the Company to turn over the stock to it for cancellation, upon payment to him of the price he paid.

The appellant argues that the redemption of the Wilbur stock by the Company was not a condition of the acquisition of the partnership because, first, the method adopted was of no legal effect and, second, because the Company was insolvent at the time of the purported redemption. This illegality of method and impossibility of fulfillment, it is argued, prevented the redemption from being a condition of the acquisition. As long as the condition is a lawful one, however, it is within the corporate power to accept it even though the means employed to fulfill the condition were illegal or fraudulent. See *Booth v. Robinson,* 55 Md. 419, 436. To argue to the contrary is to confuse purpose with method. It does not follow, as the appellant contends, that because the method adopted was illegal and fulfillment was impossible "the corporation had never made it its purpose to acquire the Wilbur stock and that John was free to buy the Wilbur stock for himself, free of any duty to act for the corporation."

It is beyond question that "[n]o corporation of this State may redeem or acquire for value any shares of its own stock when it is insolvent * * *." Code (1957), Art. 23, sec. 32 (c). See *Kraft v. Rochambeau Holding Co.,* 210 Md. 325. The facts clearly indicate that the Company was insolvent at the time of the purported redemption, and this rendered it unable to purchase its own shares out of its own assets at that time. Furthermore, had the stock been actually acquired at that time under color of the tainted redemption, it would have been, as the Chancellor found, "a legal fraud." But the attempted use of an improper method does not prevent the purpose from being lawfully achieved in the future. The mere fact that the purpose was conceived at a point in time when it could not be legally realized does not change this. The acquisition of the

Wilbur stock remained, then, an open-end obligation and a proper purpose of the Company. This is to be distinguished from the case where a corporation contracts to purchase its own stock at an indeterminable future date in a state where the law restricts such purchases to the corporation surplus fund. Such a contract has been found to be lacking in mutuality, as the corporation may not in fact be able to perform at such future date, and thus lacking in consideration. See *Topken, Loring & Schwartz, Inc. v. Schwartz,* 249 N. Y. 206. Here, the actual obligation of the Company ran to the partners Michael and John and was ancillary to the agreement to transfer the assets of the Shipyard Restaurant, an agreement that was already supported by consideration. The purpose and obligation being a legally realizable one, it does not follow that the Company could not agree to fulfill it under circumstances and at a time when the object could be lawfully accomplished. When John purchased the Wilbur stock, the Company was completely solvent and the acquisition is conceded to be valid as between the parties. Private action by a director is certainly one method of lawfully accomplishing the condition. John then fulfilled an announced corporate purpose by purchasing the Wilbur stock.

The appellant does not dispute the general proposition that an officer and director cannot use his position to derive an advantage in conflict with the proper discharge of his duty to the Company or in competition with it. See *Waller v. Waller,* 187 Md. 185 and *Vulcanized Rubber & Plastics Company v. Scheckter,* 162 A. 2d 400, 404 (Pa.). The argument seems to be that John had been "frozen out" of his position at the time he acquired the Wilbur stock. It was shown, however, that John never resigned, and that in February, 1961, he purchased an automobile on behalf of the Company and signed a Company note in his capacity as an officer. There was no *de jure* or *de facto* termination of his position, as the Chancellor found. Cf. *Ritterpusch v. Lithographic Plate,* 208 Md. 592.

This Court has long recognized as a corollary to the law of a corporate officer's and director's fiduciary duty, that, when presented with a business opportunity to fulfill a corporate purpose, he should take advantage of it, not for himself, but for the corporation. See *Acker, Merrall & C. Co. v. McGaw,* 106

Md. 536. This is true although under other circumstances a director may purchase his corporation's stock in his private capacity. *Ace Development Co. v. Harrison*, 196 Md. 357. The line is drawn at the point where a purchase for the director's own account has the effect of thwarting a declared corporate policy. See *Vulcanized Rubber & Plastics Company v. Scheckter, supra; Kelly v. 74 & 76 West Tremont Avenue Corporation*, 151 N. Y. S. 2d 900, mod. 160 N. Y. S. 2d 932, aff. as mod. 161 N. Y. S. 2d 825; *Bisbee v. Midland Linseed Products Co.*, 19 F. 2d 24 (C. A. 8th), *cert. den.* 275 U. S. 564.

Of course, a corporation, as such, has no interest in its outstanding stock or in dealings therein by its officers, directors or shareholders. If there is a struggle for control the corporation would normally occupy a neutral position. But in the case at bar the Company had a direct interest in acquiring the assets of a solvent partnership in order to pay its creditors. The condition, to which everyone agreed, was that the Wilbur stock be redeemed so that the partners might not be required to share future profits with shareholders outside the family. When John purchased the Wilbur stock for his own account, he frustrated a valid corporate purpose that had been invalidly consummated. We agree with the Chancellor that this was a breach of his fiduciary duty under the circumstances.

The appellant argues that John had always been treated as a 50% owner, and his acquisition of the twenty shares would merely restore him to that position, as compared with Michael and Nick, who together own 2050 shares. Since Michael and John owned the partnership in equal shares, John contends that the end result should be the same in the stock of the Company. He alleges that the understanding was that Nick should surrender his twenty shares to the Company or divide them between Michael and John. When Nick, in 1960, had his twenty shares transferred into the joint name of Nick and Michael, it is suggested that John was relieved of any further duty to surrender the Wilbur shares to the Company.

The Chancellor found as a fact, however, that Nick never agreed to give John any part of his twenty shares, although there had been a discussion of this matter in 1957. Mr. Queen, the accountant, testified that he was present at this discussion

and advised against any change in the stock interest of Nick Mallis, as this would affect the five year carry-over provisions and the contemplated tax savings to the partners. It was agreed that Nick should retain his twenty shares, and nothing was said about any future surrender or division. Even if the appellant's argument based on equality were sound, it has no factual support in the case at bar.

*Decree affirmed, with costs.*