588 A.2d 793

**Ronald T. EDWARDS**

v.

**GRAMLING ENGINEERING CORPORATION.**

**No. 40, Sept. Term, 1990.**

Court of Appeals of Maryland.

April 16, 1991.

Motion for Reconsideration Denied May 24, 1991.

Joel S. Aronson (Charles Michael Tobin, Stefanie L. Schwartz, Tobin, Piliero & Associates, P.C., all on brief), Rockville, for appellant.

Michael H. McConihe (Carl Roberts, O'Brien, Birney, & Butler, all on brief), Rockville, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE and CHASANOW, JJ.

CHASANOW, Judge.

During the period 1972 to 1978, William Gramling (Gramling) and Denver Roberts (Roberts) developed an invention called an "Autoswab," a self-propelled device used to extract oil from oil wells. The Autoswab forces oil and water out of oil wells. The device is placed in the well casing, it travels below the surface of the oil, and a rubber seal is engaged. Natural gas, which is normally present in an oil well, is trapped below the device and pressure from the gas pushes oil to the surface where it can be put into a tank. In 1978, Ronald Edwards (Edwards) joined the team as a promoter to market the invention. In 1980, Gramling Engineering Corporation (the Corporation), a close corporation, was formed with Gramling a 37½% shareholder, Roberts a 37½% shareholder, and Edwards a 25% shareholder. All three shareholders were designated as directors and officers of the Corporation at that time. A primary purpose of the Corporation was the development, with the aid of a Department of Energy grant, of a more effective seal. By 1982, the Corporation had developed an improved, though allegedly imperfect, seal design. At that point, the principals seem to have diverged in their goals for the Corporation. It appears that Gramling, with Roberts' assent, was engaged in an effort to sell the Corporation and its technology; Edwards' ambition was to perfect the seal and pursue the production and marketing of the invention.

Up to this time, the seals used in the Autoswab had been manufactured from a single-cavity experimental mold, which created one seal at a time. When Edwards proposed to build a four-cavity production mold and further improve the seal design, Gramling advised him that the seal was satisfactory and that the Corporation would not pay for a

new mold. Knowing that the Corporation was short of cash, Edwards decided to finance the production of the four-cavity mold himself in the hope that the Corporation would later agree to reimburse him for the costs. Although the Corporation used seals created from the new four-cavity production mold in the Autoswab from September 1983 to September 1985, it did not reimburse Edwards for the costs of the production mold.

Sometime in 1983, without the knowledge or consent of the Corporation, Edwards, in his own name, secretly applied for a patent on the seal being used by the Corporation in the Autoswab. The patent, Patent No. 4,528,896, was granted July 16, 1985, in Edwards' name.

On July 29, 1985, Gramling called a meeting of the shareholders of the Corporation to discuss a proposal that he had negotiated to sell the Corporation for $2.6 million. At that meeting, Gramling refused to divulge specific information about the sale to Edwards, who refused to vote in favor of the proposal. After the meeting, Edwards revealed to the other shareholders for the first time that he had secretly obtained a patent on "his design of the seal." Gramling immediately demanded that Edwards assign the patent to the Corporation, and Edwards refused. The proposed sale could not be consummated unless the patent was assigned to the Corporation and included in the deal.

Thereafter, relations among the principals steadily declined. Edwards was removed as secretary-treasurer of the Corporation, although he continued to occupy a seat on the board of directors. Gramling demanded that Edwards return the Corporation's books and records, and Edwards complied. Gramling also demanded Edwards turn over all molds. After building the four-cavity mold, Edwards had used the Corporation's single-cavity mold to attempt to design yet another seal. The single-cavity mold was returned, but as a result of Edwards' alteration of the mold, it was no longer usable by the Corporation to produce the seal. Edwards refused to turn over the four-cavity mold to the Corporation.

Edwards advertised in trade journals for sale of the seals and, ultimately, his corporate stock. In 1987, Edwards demanded a statement of the affairs of the Corporation which Gramling refused to provide. Edwards filed suit for wrongful denial of a corporate statement of affairs. The Corporation counterclaimed alleging (1) breach of fiduciary duty, (2) tortious interference with a valid business expectancy, (3) conversion, (4) intentional interference with advantageous contractual arrangements, and (5) defamation. In addition to compensatory and punitive damages, the Corporation sought an injunction directing Edwards to assign the patent at issue and all present and future patent applications and patents related to the Autoswab to the Corporation, to refrain from interfering with the sale of the Corporation or its assets, and to return all corporate property in Edwards' custody or control to the Corporation. Edwards demanded a jury trial in his answer to the counterclaim. The intentional interference with advantageous contractual arrangements count was dismissed, and the defamation claim was withdrawn. By the time the case came on for trial, the Corporation had provided Edwards with a statement of affairs. The issue of damages for wrongful denial of a corporate statement of affairs was tried to the court, and the court dismissed the complaint because most of the issues were moot and no damages had been proved. The remaining three counts of the counterclaim were tried before a jury, which rendered a special verdict on the following questions:

"1. Did Ronald Edwards breach his fiduciary duty to Gramling Engineering Corporation?

2. Did Ronald Edwards tortiously interfere with a valid business expectancy of Gramling Engineering Corporation? ...

3. Did Ronald Edwards convert corporate property to his own use?"

The jury answered question 1 in favor of the Corporation and questions 2 and 3 in favor of Edwards. In accordance with that verdict, the court entered an order dismissing the

tortious interference and conversion counts. The court also issued an injunction requiring that Edwards assign Patent No. 4,528,896 to the Corporation, enjoining Edwards from engaging in any activity related to the patent or products covered thereby, and requiring that Edwards turn over the four-cavity mold used to produce the patented seal to the Corporation. Edwards appealed to the Court of Special Appeals, and we granted certiorari while the case was pending before that court.

On appeal, Edwards claims that the circuit court erred in granting injunctive relief because that relief is inconsistent with the jury's verdict, thereby depriving him of the benefit of the jury trial. He further claims that the trial judge erred in granting injunctive relief on the special verdict without making specific findings of fact. Edwards also contends that, because of federal preemption, the trial court was without subject matter jurisdiction to determine entitlement to the patent and to order him to assign it to the Corporation. We will take each of these contentions in turn.

## I. GRANTING INJUNCTIVE RELIEF

■ We examined the impact of the merger of law and equity on the right to jury trial in *Higgins v. Barnes*, 310 Md. 532, 530 A.2d 724 (1987). In that case, we observed,

"Maryland Rule 2–301, abolishing the separation of law and equity states: 'There shall be one form of action known as "civil action." ' Federal Rule of Civil Procedure 2, accomplishing the same purpose, provides: 'There shall be one form of action to be known as "civil action." ' The essentially identical language of the two rules is not coincidental. The commentary to Md. Rule 2–301 specifically notes that the rule 'is derived' from the Federal Rule. For this reason, and because Maryland courts have traditionally relied on the federal courts' interpretations of analogous rules as persuasive authority, *East v. Gilchrist*, 293 Md. 453, 459, 445 A.2d 343 (1982); *Edmonds v. Lupton*, 253 Md. 93, 99, 252 A.2d 71 (1969), we turn to

the federal case law for guidance in defining the scope of the right to jury trial in Maryland."

310 Md. at 543, 530 A.2d at 729. Federal courts have supplied guidance that assists us in our review of the instant case. First, federal courts have held that, where equitable claims are to be resolved by the court and legal claims are to be resolved by the jury, the judge is " 'without power' to reach a conclusion inconsistent with that of the jury." *Gutzwiller v. Fenik,* 860 F.2d 1317, 1333 (6th Cir. 1988); *accord, Dybczak v. Tuskegee Institute,* 737 F.2d 1524, 1526–27 (11th Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1180, 84 L.Ed.2d 328 (1985). *See also* 5 J. Moore & J. Lucas, *Moore's Federal Practice,* para. 38.13 (2d ed. 1988). Second, as the Supreme Court has recognized,

"Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. For a search for one possible view of the case which will make the jury's finding inconsistent results in a collision with the Seventh Amendment."

*Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines,* 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798, 807 (1962). *See also* 5A J. Moore & J. Lucas, *Moore's Federal Practice,* para. 49.03[4] at 39 (1990). Edwards claims that the relief granted for his breach of fiduciary duty, *i.e.,* ordering him to assign the patent and turn over the four-cavity mold to the Corporation, is inconsistent with the jury's finding in his favor on the tortious interference and conversion counts. It is Edwards' position that

"the jury found that Edwards did not interfere with any of [the Corporation's] business expectations, and that he did not convert [the Corporation's] property to his own use. The patent to the seal and the four cavity mold used to make the seals were the only properties at issue: The jury found no misconduct on Edwards' part with respect to either."

Edwards evades the fact that the jury did find misconduct in his breach of fiduciary duty to the Corporation. He admits in his brief:

"There is evidence that Edwards did the following, any one of which could have been the act upon which the jury based its finding:

Did not place the Gramling Engineering corporate name on the mold and seal; *ordered the four cavity mold in his own name,* and insisted on removing [the Corporation's] name from the purchase order; disregarded the instructions of the other officers in ordering the new mold; *obtained the patent; ...* attempted to sell his patent ...; wrote to [a corporate distributor] to tell him to stop selling Autoswabs because of his patent on the seals, and in 1986, took out advertisements in trade papers advertising the sale of the seals and his stock...." (Emphasis added.)

Edwards argues that it is not clear from the verdict which activity may have formed the basis for the jury's finding. Therefore he surmises that, to be consistent, the jury's finding of a breach of fiduciary duty must have been independent of the activities concerning the mold and the seal. Edwards' argument depends on the assumption that the jury verdict in his favor on the conversion count is tantamount to a finding that he owned the patent. This assumption is erroneous.

We may not conclude that Edwards rightfully owns the patent simply because the jury returned a verdict in Edwards' favor on the conversion count. The finding of the jury may merely indicate that the Corporation failed to meet its burden of proof on that count. On the conversion claim, the trial judge, without objection, instructed the jury, in part, as follows:

"Count Number Three is a count for conversion, and conversion, just in lay language, means to convert. In legal language, a conversion occurs when a person, without authority or permission, intentionally *takes the personal property* of another person or corporation.

To constitute a conversion, the acts must be positive and tortious; that is, there must be a *taking* without the

corporation's consent, either expressed or implied." (Emphasis added.)

There are at least two possible scenarios under which a jury could find there was no conversion. The scenario which forms the basis of Edwards' contention is that there was no conversion because he was the rightful owner of all property in question. It is equally possible, however, that the jury found that there was no conversion because he did not tortiously take any property even though he wrongfully applied for and obtained the patent in his own name without the Corporation's consent. The mere fact that Edwards applied for the patent in his own name may not have amounted to a conversion and may not initially have been improper. It is generally recognized that "[c]orporations ... cannot apply as such for a patent." 5 A. Deller, *Deller's Walker on Patents* § 439 at 59 (2d ed. 1972); 3 E. Lipscomb III, *Lipscomb's Walker on Patents* § 9:43 at 75 (3d ed. 1985). Patents are freely assignable. 35 U.S.C. § 261 (1988). Therefore, Edwards could have obtained the patent in his fiduciary capacity and held it for the benefit of the Corporation or assigned it to the Corporation once it was issued. Under the second scenario, the jury's verdict for Edwards on conversion is consistent with the verdict for the Corporation on breach of fiduciary duty.

The counterclaim for breach of fiduciary duty in this case alleged that

"Edwards, with full knowledge that the development of a commercially viable improved seal was entirely a corporate undertaking and opportunity, breached his fiduciary duty to [the Corporation] *by filing a patent application and obtaining Patent No. 4,528,896 solely in his own name for the improved seal* that had been developed by and through [the Corporation]. Edwards' patent application was based entirely on knowledge obtained while serving as an officer and director of [the Corporation]."

"Edwards thus subordinated the interests of the corporation to his own personal interests and by obtaining a

patent on the improved seal took for himself an opportunity which belonged to the corporation."

"Edwards has further breached his fiduciary duty to [the Corporation] by purporting to use Patent No. 4,528,-896 to impede and block a proposed sale of the corporation or its assets, and to prohibit [the Corporation] from manufacturing and marketing seals covered by the patent, and by attempting to sell the patent for his own personal gain. As a result, the proposed sale of the corporation or its assets has not been possible and [the Corporation] has suffered substantial injury to its reputation and good will in the business community."

"By reason of Edwards' wrongful conduct, [the Corporation] has suffered damages in an amount as yet undetermined, and unless his continued wrongful conduct is restrained [the Corporation] will suffer further irreparable injury." (Emphasis added.)

There is ample evidence in this case to show that Edwards embarked on the development of the improved seal and manufacture of the four-cavity mold on behalf of the Corporation and in his capacity as an officer and director of the Corporation in the hope that the Corporation would ultimately reimburse him for his expenditures. He so states in his testimony at trial:

"Q  Who, in fact, paid for that four cavity mold to be manufactured?

A  I did.

Q  And at the time you placed the order, what were your feelings in terms of who you wanted to own that four cavity mold and that design?

A  Gramling Engineering.

Q  In regard to payment for the work that needed to be done, they had told you they weren't going to pay before you entered—

A  That's true.

Q  Did you have a belief as to whether or not their position in regard to payment would change or a hope?

A  Yes.

Q  And what was that belief or hope?

A  Well, sometimes people come around, you know. That's an expression you use, you know, when people come to their senses as to whether or not, you know, it was proper."

It was only later, when the Corporation persisted in its refusal to pay for this activity that Edwards determined to protect his investment and pressure the Corporation into paying by patenting the seal in his own name. Even after Edwards had applied for the patent, from 1983 to 1985, the Corporation used seals from the four-cavity mold in its operations as though they were its own without paying royalties or other remuneration to Edwards. As Edwards' trial counsel, not his attorneys on appeal, argued to the jury with regard to the patent's potential coverage of the Corporation's seal design,

"He doesn't care what the patent says. He knows in his mind that seal belongs to the corporation, and if they want to use it, he has no complaint. If they want to use it, they can use it. That has always been his position. He said if they need something from me to be able to use it, you know, all they have got to do is send it to me and I will sign it.

All Mr. Edwards wanted to do was protect his investment."

■ From the evidence available to it, the jury in this case could have determined that Edwards' actions in secretly patenting the seal in his own name without the Corporation's consent, and in exercising control over the patent in a manner contrary to the Corporation's interests, constituted a breach of his fiduciary duty to the Corporation but was not a conversion of property. Under this view, which we adopt, the jury's answers to the three special issues are consistent; and the injunctive relief fashioned by the court is consistent with the jury's verdict. In reconciling a jury's answers to specific interrogatories, we should assume that the jury was rational and consistent, rather than irrational

or inconsistent. Our quest should be for a view of the case which would make the jury's findings consistent. *Atlantic & Gulf Stevedores, Inc.*, 369 U.S. at 364, 82 S.Ct. at 786, 7 L.Ed.2d at 807.

■■ Edwards cites *Tenneco Oil Co. v. Joiner*, 696 F.2d 768 (10th Cir.1982), for his claim that, after trial of the legal claims to the jury, the judge was under a duty to make "separate" findings of fact on the equitable issues. *Tenneco* is distinguishable from the case at bar. There, the court noted, "The constructive trust claim rests on different facts...." *Id.* at 776. In the instant case, the jury's findings of fact were determinative of all claims before the court. All parties agreed to the use of the special verdict, and the judge was bound by the jury's findings of fact. *Gutzwiller*, 860 F.2d at 1333; *Dybczak*, 737 F.2d at 1526–27. *See also* P. Niemeyer & L. Richards, *Maryland Rules Commentary* 125 (1984).

■■ Edwards argues that the trial judge was governed by Maryland Rule 2–522(a) which requires that the judge make "a brief statement of the reasons for the decision...." Rule 2–522(a) is applicable to court trials. In the instant case the fact findings were made by a jury by its special verdict. Rule 2–522(c) rather than Rule 2–522(a) governs special verdicts. Rule 2–522(c) states as follows:

"The court may require a jury to return a special verdict in the form of written findings upon specific issues. For that purpose, the court may use any method of submitting the issues and requiring written findings as it deems appropriate, including the submission of written questions susceptible of brief answers or of written forms of the several special findings that might properly be made under the pleadings and evidence. The court shall instruct the jury as may be necessary to enable it to make its findings upon each issue. If the court fails to submit any issue raised by the pleadings or by the evidence, all parties waive their right to a trial by jury of the issues omitted unless before the jury retires a party

demands its submission to the jury. As to an issue omitted without such demand, the court may make a finding or, if it fails to do so, the finding shall be deemed to have been made in accordance with the judgment entered.

No party may assign as error the submission of issues to the jury, the instructions of the court, or the refusal of the court to submit a requested issue unless the party objects on the record before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection. Upon request of any party, the court shall receive objections out of the hearing of the jury."

Situations such as the one at bar were contemplated by the rule. "[A] special verdict may be required if the court is to make factual findings on equitable claims following the entry of a verdict." *Maryland Rules Commentary* at 311. Niemeyer and Richards explain,

"Any issues not submitted to the jury by way of a special question are decided by the court following the entry of a verdict. The failure of counsel to request a question on a particular issue or to object to the failure to include a question on a particular issue constitutes a waiver of the right to trial by jury on that issue. It is therefore critical to review all questions to ensure that all facts and issues to be submitted to the jury have been covered by the questions."

*Id.* at 312. Thus, it is counsel's responsibility to assure that all critical issues are submitted to the jury. The judge may fill in the gaps when necessary to resolve issues remaining after entry of a special verdict.

█ In the instant case, Edwards complains that "[t]he jury found that Edwards had breached his fiduciary duty to [the Corporation] but did not state how this breach had occurred or upon what fact it relied when answering that one verdict interrogatory in the affirmative. Accordingly, it was necessary for the trial Court to briefly state the reasons and the basis upon which its

Injunctive Order was entered.  However, there were no findings of fact or conclusions of law entered by the Court below at any time from the return of the jury verdict through the entry of the equitable order."

Edwards did not object to the wording of the questions submitted to the jury at trial, nor did he request that the jury explicitly determine ownership of the patent.  Edwards may not, at this late date, bemoan the imprecise language of the special verdict.  Edwards was aware of the questions posed to the jury.  If he felt they formed an insufficient basis for the court's later consideration of the remaining equitable issues, he should have objected before the jury retired.

■■■■  Although it might have been preferable for the judge to have explained his findings, the language of Rule 2–522(c) is clear: "As to an issue omitted without such demand, the court may make a finding or, if it fails to do so, the finding shall be deemed to have been made in accordance with the judgment entered."  The special verdict rule imposes no requirement upon the trial judge to make specific findings of fact or conclusions of law.  If, as in this case, the judge fails to make such findings, we may assume that they are consistent with the judgment.  As previously discussed, it is apparent from the record before us that the jury found that Edwards breached his fiduciary duty to the Corporation by obtaining the patent in his own name without the Corporation's consent, and by exerting control over the patent inconsistent with the Corporation's interests, but that his misconduct did not constitute a conversion.  As a result of his breach of fiduciary duty, Edwards improperly acquired legal title to the patent.  To remedy this, the court issued an injunction which required Edwards to assign the patent to the Corporation, to refrain from engaging in any activity relating to the patented seal, and to turn over the mold used to manufacture the patented seal.

The injunctive remedy formulated by the court in this case is in the nature of a constructive trust.  "Equity creates such a trust where a person holding title to a

property is subject to an equitable duty to convey it to another person on the ground that he would be unjustly enriched if he were permitted to retain it. Such a trust may arise because the property was acquired through ... a breach of fiduciary duty...." *Siemiesz v. Amend,* 237 Md. 438, 441–42, 206 A.2d 723, 726 (1965). "[T]he traditional remedy imposed by courts upon a finding of a misappropriation of corporate opportunity is the impression of a constructive trust in favor of the corporation upon the property." 3 L. Zajdel, *Fletcher Cyclopedia of the Law of Private Corporations* § 861.1 at 282–83 (Perm ed. 1986 Rev. Vol.) (hereinafter *Fletcher Cyc. Corp.*). *See, e.g., Morad v. Coupounas,* 361 So.2d 6, 10 (Ala.1978), *appeal after remand,* 380 So.2d 800 (Ala.1980); *Guth v. Loft, Inc.,* 23 Del.Ch. 255, 5 A.2d 503, 510 (1939); *Mile-O-Mo Fishing Club, Inc. v. Noble,* 62 Ill.App.2d 50, 210 N.E.2d 12, 15–16 (1965); *Schildberg Rock Products Co. v. Brooks,* 258 Iowa 759, 140 N.W.2d 132, 137 (1966); *Trayer v. Bristol Parking,* 198 Va. 595, 95 S.E.2d 224, 230 (1956). *See also* 3 *Fletcher Cyc. Corp.* § 861. In Maryland, this remedy was applied in *Faraclas v. City Vending Co.,* 232 Md. 457, 194 A.2d 298 (1963), which dealt with a corporate officer's and director's breach of his fiduciary duty to the corporation. In *Faraclas,* the corporation had determined to purchase shares of stock owned by a third party so that the corporation would be wholly family owned. Instead of purchasing the stock, the corporation engaged in an invalid redemption of the third party's shares. Some time later, when differences developed between the shareholders, Faraclas negotiated the purchase of the shares which had previously been invalidly redeemed. The Court affirmed the chancellor's determination that Faraclas "frustrated a valid corporate purpose that had been invalidly consummated" in violation of his fiduciary duty to the corporation, *id.* at 464, 194 A.2d at 301, and upheld the order that Faraclas deliver the stock so obtained to the corporation for cancellation. *Id.* at 460, 194 A.2d at 299.

The imposition of a constructive trust on the patent and mold in this case is consistent with a finding that Edwards breached his fiduciary duty to the Corporation by filing the patent in his own name without the Corporation's consent and by exercising control over the patent inconsistent with the Corporation's interests. That finding was the obvious conclusion of the trial judge based on the judgment entered.

## II. JURISDICTION OF COURT TO ENJOIN ASSIGNMENT OF PATENT

■ It is undisputed that the federal courts have exclusive jurisdiction over claims arising under the patent laws. 28 U.S.C. § 1338 (1988); *Becher v. Contoure Laboratories,* 279 U.S. 388, 49 S.Ct. 356, 73 L.Ed. 752 (1929). Nevertheless, "courts of a state may try questions of title, and may construe and enforce contracts relating to patents." *New Marshall Engine Co. v. Marshall Engine Co.,* 223 U.S. 473, 478, 32 S.Ct. 238, 239, 56 L.Ed. 513, 515 (1912) (citing *Wade v. Lawder,* 165 U.S. 624, 17 S.Ct. 425, 41 L.Ed. 851 (1897)); *accord Jones Cold Store Door Co. v. Jones,* 108 Md. 439, 443, 70 A. 88, 90 (1908). *See also* 9 *Deller's Walker on Patents* § 808 at 12 (1976). The Supreme Court enunciated the test in *Pratt v. Paris Gas Light & Coke Co.,* 168 U.S. 255, 18 S.Ct. 62, 42 L.Ed. 458 (1897):

"To constitute such a cause, the plaintiff must set up some right, title, or interest under the patent laws, or, at least, make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction of these laws.

... Section [1338] does not deprive the state courts of the power to determine questions arising under the patent laws, but only of assuming jurisdiction of 'cases' arising under those laws. There is a clear distinction between a case and a question arising under the patent laws. The former arises when the plaintiff in his opening pleading—be it a bill, complaint, or declaration—sets up a right under the patent laws as ground for a recovery. Of such the state courts have no jurisdiction. The latter may

appear in the plea or answer or in the testimony. The determination of such question is not beyond the competency of the state tribunals." (Citations omitted.) *Id.* at 259, 18 S.Ct. at 64, 42 L.Ed. at 460; *accord Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 807–08, 108 S.Ct. 2166, 2173, 100 L.Ed.2d 811, 824 (1988). *See also* 9 *Deller's Walker on Patents* § 808; 7 *Lipscomb's Walker on Patents* § 23:5 (1988). Under this test, there is no claim derived from patent law raised by the pleadings in the instant case that would require exclusive federal jurisdiction. Rather, this is a breach of fiduciary duty case involving equitable title to a patent. Validity of the patent and possible infringement are not implicated in this case, nor are we asked to construe any patent law. The mere fact that the subject of the breach of fiduciary duty was a patent does not place the controversy in the exclusive jurisdiction of the federal courts. Edwards has not raised a claim under the patent laws in any "proper sense." *See Pratt,* 168 U.S. at 259, 18 S.Ct. at 64, 42 L.Ed. at 460. In fact, he raised no patent law issue below and did not contest jurisdiction until this appeal.

■ Finally, Edwards argues that "[t]he trial Court apparently determined that the patent should not have been issued to Edwards." If that is the case, he suggests the appropriate remedy would have been to declare the patent void. Since the circuit court had no jurisdiction to declare the patent void, Edwards maintains that the court was without jurisdiction to order him to assign it. To the contrary, there is ample evidence, as previously discussed, from which the jury could find that Edwards breached his fiduciary duty by obtaining the patent in his own name and refusing to assign it to the Corporation. Therefore, the injunctive relief in this case sought to correct Edwards' breach of fiduciary duty and restore legal title to the equitable owner of the patent. *See Kennedy v. Wright,* 676 F.Supp. 888, 892 (C.D.Ill.1988), *aff'd,* 867 F.2d 616 (Fed.Cir. 1989) ("where the inventor is more than an employee and occupies a special relationship of trust and confidence to the

business, courts under certain circumstances have held it inequitable for the individual to retain a title which more properly belongs to the company. In such instances, the fiduciary agent will be compelled to assign the patent"); *Dowse v. Federal Rubber Co.*, 254 F. 308, 310 (N.D.Ill.1918) ("He did not expressly contract as a part of his duties to design new tires; but if he did so agree in substance, and was more than a mere employ[ee], having the main responsibility to make the business successful, then he should be compelled to assign the patent"). This action was fully within the jurisdiction of the court. "The rule is well settled that the State Courts may determine ... in whom the patent is vested...." *Jones*, 108 Md. at 443, 70 A. at 90; *see also Becher*, 279 U.S. at 391, 49 S.Ct. at 357, 73 L.Ed. at 753–54.

In summary, the verdict of the jury in this case was not inconsistent with the equitable remedy fashioned by the trial judge. Based on the jury's special verdict, the judge properly concluded that the jury found that Edwards breached his fiduciary duty to the Corporation by obtaining the patent in his own name without the consent of the Corporation and by exercising control over the patent inconsistent with the Corporation's interests. The judge then determined that the appropriate remedy was that Edwards (1) assign the patent on the seal to the Corporation, (2) not engage in any activity relating to the patented seal, and (3) turn over the mold used to manufacture the patented seal. The issue of equitable ownership of the patent could be tried in a state court, and the judge below did not err in ordering Edwards to assign the patent to the equitable owner.

JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.